UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| BRUCE HUGHS,<br><br>　　　　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,<br>Acting Commissioner of Social Security,<br><br>　　　　　　　Defendant. | Case No. C15-5091-RSL-BAT<br><br>**REPORT AND RECOMMENDATION** |

Bruce Hughs appeals the ALJ's written decision finding him not disabled. He contends the ALJ erroneously discounted the opinions of his "treating medical sources" and his testimony, and that these errors were harmful because they resulted in a Residual Functional Capacity (RFC) determination that failed to account for all of his limitations. Dkt. 12 at 1. As discussed below, the ALJ gave at least one valid reason to discount Mr. Hughs' testimony but harmfully failed to account for all limitations found by treating doctor Raymond West, M.D. Accordingly, the Court recommends the Commissioner's final decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g).

**BACKGROUND**

After conducting a hearing on September 23, 2013, the ALJ issued a decision finding Mr.

REPORT AND RECOMMENDATION - 1

Hughs not disabled. Tr. 17-31, 37-86. Utilizing the five-step disability evaluation process,[1] the ALJ found at steps one through three that Mr. Hughs last worked in April 2011; that bilateral hand tremor, arthritic knees, mild degenerative disk disease, mild T11-T12 compression deformities, dysthymic disorder, cluster B personality traits, and glaucoma were severe impairments; and that these impairments did not meet the Listings.[2] Tr. 19-21. The ALJ found Mr. Hughs had the RFC to perform light work with the following limitations: he could perform simple routine or learned light work; walk or stand for four out of eight hours with the option to sit or stand; "perform seldom postural movements"; perform fine manipulations about ten percent of an eight-hour day; and have superficial public contact and occasional interaction with co-workers but should work independently and have no intense interaction with others; he should have his own job station; he should only occasionally be supervised; and he would be off task for five and a half percent of the workday. Tr. 23. The ALJ further found Mr. Hughs could not crawl, kneel, balance, climb tall ladders, work at heights or near hazards, operate heavy machinery, have direct access to drugs or alcohol, perform security work, or be in charge of the safety of others. Tr. 23.

With this RFC, the ALJ found at step four that Mr. Hughs could perform his past relevant work as a delivery driver. Tr. 29. At step five, the ALJ called a vocational expert (VE), who testified that Mr. Hughs could work as a toll collector and photo copy machine operator. Tr. 30. The VE also testified that if Mr. Hughs was limited to performing sedentary work, he could work as an election clerk or document preparer. Tr. 30. The Appeals Council denied Mr. Hughs' request for review, making the ALJ's decision the Commissioner's final decision. Tr. 1-4.

---

[1] 20 C.F.R. §§ 404.1520, 416.920.
[2] 20 C.F.R. Part 404, Subpart P. Appendix 1.

REPORT AND RECOMMENDATION - 2

**DISCUSSION**

**A.    The ALJ's evaluation of the medical evidence**

Mr. Hughs first contends the ALJ misevaluated the opinions of his "treating medical sources," Albert Kim, M.D., and Raymond West, M.D.[3]  Dkt. 12 at 6.

   *1.    Albert Kim, M.D.*

In October 2012, treating physician Albert Kim, M.D., performed a Department of Social and Health Services (DSHS) physical functional evaluation.  Dr. Kim listed Mr. Hughs' chief complaints as chronic knee pain, chronic low back pain, tremors, and decreased vision, Tr. 441, and opined Mr. Hughs was limited to sedentary work.  Tr. 443.  In July 2013, Dr. Kim completed a questionnaire, Tr. 665-666, in which he diagnosed major depression, glaucoma, intermittent tremor, frequent falls, chronic knee pain, chronic low back pain, insomnia, personality disorder, and post-traumatic stress disorder, Tr. 665; the doctor opined Mr. Hughs needed to lie down two to three hours per day for back and knee pain, and would miss more than four days of work per month due to medical impairments.  Tr. 665-66.

The ALJ gave little weight to Dr. Kim's opinions.  Generally, a treating physician's opinion is entitled to controlling weight if it is well supported by diagnostic techniques and not inconsistent with substantial evidence in the record.  20 C.F.R. § 404.1526(c)(2).  The ALJ must provide "clear and convincing reasons" to reject an uncontradicted treating physician's opinion, and "specific and legitimate" reasons where contradicted.  *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995).  Under either standard, the court concludes the ALJ did not err in discounting

---

[3] In his opening brief, Mr. Hughs notes that opinions were rendered by examining doctors Kenneth Lauren, M.D., Dana Harmon, Ph.D., treating doctor Martha Yanci-Torres, M.D. and treating ARNP, Kathryn Shaw.  However, as he did not specifically assign error to the ALJ's treatment of their opinions, the Court therefore will not discuss or disturb the ALJ's assessment of those opinions.

REPORT AND RECOMMENDATION - 3

1  Dr. Kim's opinions.

2       The ALJ discounted the opinions contained in Dr. Kim's DSHS evaluation finding there
3  was no objective evidence to support the opinions.  Under "objective findings," Dr. Kim noted
4  "marked tenderness in both knee joints, limited ranges of motion due to pain, no tremors
5  observed in the exam room."  Tr.  442.  He included no diagnostics or imaging as evidence of
6  Mr. Hughs' impairments, Tr. 441-43, but indicated that X-rays and blood work ordered the day
7  of the assessment had not been completed.  Tr.  442.  Additionally, Dr. Kim did not complete the
8  range of motion evaluation chart attached to the assessment.  There is thus no basis to conclude
9  he actually performed a range of movement examination.  Tr.  44-45. On this record, the Court
10 cannot say it was not unreasonable for the ALJ to discount Dr. Kim's DSHS opinions as
11 unsupported.  "[A]n ALJ need not accept the opinion of a doctor if that opinion is brief,
12 conclusory, and inadequately supported by clinical findings."  *Bayliss v. Barnhart*, 427 F.3d
13 1211, 1216 (9th Cir. 2005.)  Accordingly, the ALJ did not err in rejecting Dr. Kim's DSHS
14 evaluation due to lack of objective evidence.

15      The ALJ also discounted the opinions Dr. Kim gave in the July 2013 questionnaire.  The
16 ALJ noted "[w]hile the claimant's treatment records certainly support some limitations related to
17 back pain, Dr. Kim's treatment record is not consistent with the limitations he indicated."  Tr.
18 27.  Dr. Kim opined that Mr. Hughs would need to lie down for two to three hours each day
19 because of his back and knee pain, and that he would likely miss four or more days of work per
20 month.  Tr.  665-66.  However, Dr. Kim's treatment notes do not support these significant
21 limitations, and instead show Mr. Hughs had only mild degenerative disk disease and
22 osteoarthritis that improved with physical therapy.  Tr.  562, 587.  To be sure, Dr. Kim noted that
23 Mr. Hughs complained of pain but his treatment records contain nothing indicating Mr. Hughs

REPORT AND RECOMMENDATION - 4

1  needed to lie down, or that his medical condition was so severe that it would cause him to miss

2  work four or more days a week.  The inconsistency between Dr. Kim's treatment records and the

3  limitations he assessed is a specific and legitimate reason to reject the opinion.  *See Bayliss*, 427

4  F.3d at 1216.  In sum, as the ALJ gave legitimate reasons to discount the opinions Dr. Kim

5  rendered in the DSHS evaluation and in the subsequent questionnaire, the Court affirms the

6  ALJ's treatment of the doctor's opinions.

7     *2.     Raymond West, M.D.*

8       After examining Mr. Hughs in December 2011, Tr. 350-55, Dr. West noted Mr. Hughs

9  walked with "a suggestion of antalgic gait" and carried a cane, but could walk safely for short

10 distances without the cane.  Tr.  353.  The doctor further noted Mr. Hughs had a positive

11 Romberg test and poor balance; could perform lower extremity maneuvers, but cautiously due to

12 his balance; had limited ability to squat and bend because of pain in his knees and back; had

13 normal motor strength and sensation in upper and lower extremities; and that his straight leg

14 raise tests showed poor effort bilaterally. Tr. 354-55.

15      Dr. West opined Mr. Hughs could stand and walk for up to four hours cumulatively in an

16 eight hour day with frequent breaks, and could sit for four to six hours if allowed to move about

17 for short periods of time.   Tr. 355.  Dr. West also assessed the following postural limitations:

18 Mr. Hughs could bend occasionally but could not squat, kneel, crawl, climb, push, or pull.  Tr.

19 355.  Finally, Dr. West opined under "visual, auditory and verbal limitations" that Mr. Hughs

20 had "rather severe visual acuity [limitations]," and "should not be expected to work around

21 moving machinery or from heights."  *Id.*

22      The ALJ gave Dr. West's opinion "some weight," noting "the record as a whole indicated

23 a slightly varied residual functional capacity, specifically related to the claimant's ability to

REPORT AND RECOMMENDATION - 5

change positions from sitting to standing at will and perform some manipulative tasks." Tr. 26. Mr. Hughs contends the ALJ harmfully erred because in determining his RFC, the ALJ failed to include Dr. West's opinions that Mr. Hughs had visual acuity limitations and restrictions on pushing. Dkt. 12 at 15.

The ALJ found Mr. Hughs cannot "work at heights or near hazards," but failed to discuss Dr. West's opinion regarding Mr. Hughs' "severe" visual acuity impairment. Tr. 26. While the ALJ "need not discuss *all* evidence presented," he "must explain why significant probative evidence has been rejected." *Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original).

Here, Dr. West found Mr. Hughs' visual impairment caused specific limitations. Although the ALJ gave Dr. West's opinions some weight, he erroneously failed to discuss the visual limitation or include it in the hypothetical questions posed to the VE. The Court has considered whether the ALJ's inclusion of height and hazard limitations in Mr. Hughs' RFC accounts for, by inference, the visual limitation, and finds it does not. This is because the height and hazards limits the ALJ noted could easily be related to Mr. Hughs' arthritic knees, back problems, references in the medical record of Mr. Hughs' problems with falling, e.g. Tr. 576, and mental instability. By failing to address the impact of Mr. Hughs' visual limitations on his RFC or include them in the hypothetical questions to the VE, the Court is left with no basis to conclude the ALJ considered the limitation, or what additional limitations Mr. Hugh's visual problems imposed, in addition to his other impairments. In short, because the ALJ should have but failed to address Mr. Hughs' visual problems—which is significant probative evidence of a limitation—the ALJ erred.

Mr. Hughs also contends the ALJ erred in failing to include Dr. West's opinion that he

REPORT AND RECOMMENDATION - 6

1  had pushing and pulling limitations. Dkt. 12 at 15. Dr. West specifically opined, "[s]quatting,
2  kneeling, crawling, climbing, pushing, and pulling are not indicated and should be reserved for
3  emergency conditions." Tr. 355. The ALJ noted Dr. West's assessment that "pushing and
4  pulling actions should be reserved for emergencies." Tr. 26. Despite this acknowledgement, the
5  ALJ failed to discuss the doctor's opinion further and failed to reject or include a push/pull
6  restriction in the RFC. As noted above, the ALJ must explain why significant probative
7  evidence has been rejected. As an assessment included in a medical opinion given weight by the
8  ALJ, Dr. West's pushing/pulling assessment was significant and probative evidence. The ALJ
9  accordingly erred in failing to address the limitation without comment.

10       In sum, Dr. West opined Mr. Hughs had visual and pushing/pulling limitations. The
11  doctor's opinions are therefore significant and probative evidence regarding Mr. Hugh's capacity
12  to perform work. As such, the ALJ erred in failing to discuss or account for these limitations in
13  determining Mr. Hughs' RFC.

14  **B.     The ALJ's assessment of Mr. Hughs' credibility**

15       *1.     Standard of review*

16       The Commissioner argues, contrary to controlling Ninth Circuit precedent, the ALJ need
17  never provide "clear and convincing" reasons for rejecting a claimant's testimony because the
18  Agency's regulations require, at most, only substantial evidence. Dkt. 15 at n. 3 (citing SSR 96-
19  7p; *Monjaraz-Munoz v. INS*, 327 F.3d 892, 895 (9th Cir. 2003)). The argument is foreclosed.
20  The Ninth Circuit has repeatedly and consistently held that where the record includes objective
21  medical evidence establishing that the claimant suffers from an impairment that could reasonably
22  produce the symptoms of which he complains, an adverse credibility finding must be based on
23

REPORT AND RECOMMENDATION - 7

"clear and convincing reasons."[4] *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1160, (9th Cir.. 2008) (citations omitted); s*ee also Brown-Hunter v. Colvin*, __ F. 3d __, No. 13-15213, 2015 WL 4620123, at *5 (9th Cir. Aug. 4, 2015).

The Commissioner also argues the clear and convincing standard is inapplicable in this case because the record contains affirmative evidence of malingering. Dkt. 15 at 6-7. Specifically, the Commissioner argues[5] Dr. Christmas Covell found Mr. Hughs performed psychological tests[6] which indicated "some symptom exaggeration and/or possible malingering." *Id*. at 7. The argument fails because it is an improper post hoc argument. The ALJ noted Dr. Covell's diagnosis of "rule out malingering," and opinion that Mr. Hughs' test scores were invalid. Tr. 25. But the ALJ did not find Mr. Hughs was malingering, and thus neither will the Court. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1225 (9th Cir. 1995) (Court reviews the ALJ's decision "based on the reasoning and factual findings offered by the ALJ—not *post hoc* rationalizations."). Further, while Dr. Covell believed it was *possible* Mr. Hughs was malingering, the doctor did not unequivocally conclude Mr. Hugh was in fact malingering. This ambiguity is not something the Court can resolve on review. *Cf Brown-Hunter*, 2015 WL 4620123, at *2 (A reviewing court may not make independent finding based on evidence before the ALJ to conclude the ALJ's error was harmless.").

In sum, the ALJ did not find malingering, and the record does not contain unequivocal affirmative evidence of malingering. The ALJ was thus required to provide clear and convincing reasons to discount Mr. Hugh's testimony. *Lester*, 81 F.3d at 834.

/

---

[4] This is the finding the ALJ made in Mr. Hughs' case. Tr. 23.
[5] Dkt. 15 at 6-7.
[6] *See* Tr. 367.

REPORT AND RECOMMENDATION - 8

### 2. The ALJ provided at least one valid clear and convincing reason to discount Mr. Hugh's credibility

The ALJ discounted Mr. Hughs' testimony finding it inconsistent with (1) the medical record, (2) his activities of daily living; (3) his conservative use of pain medications; (4) the ALJ's observations of Mr. Hughs' ability to sit comfortably throughout the hearing; and (5) his continued use of tobacco.  Tr. 23-26.  Because the ALJ's determination that Mr. Hugh's conservative use of pain medications, and ability to sit comfortably throughout the hearing are valid reasons supported by substantial evidence to discount Mr. Hugh's testimony, the Court affirms the ALJ's findings even assuming the other reasons were invalid.

#### a. Conservative pain medication

The ALJ found Mr. Hughs' "conservative use of pain medications was not consistent with the claimant's alleged pain severity."  Tr. 26.  Mr. Hughs argues the ALJ erred because he sought treatment, took over-the-counter pain medication, did not have insurance for more expensive medications, or could not or would not take them because of his extensive history of substance abuse.  Dkt. 16 at 3.  These arguments fail because they are made without citation to the record, and are thus unsupported and conclusory.  As Mr. Hughs has failed to show there is any evidence of record that supports his argument, he has failed to carry his burden of showing the ALJ committed harmful error.  *See Molina v. Astrue*, 674 F.3d 1104, (9th Cir. 2012) (burden of showing that an error is harmful normally falls upon the party attacking the agency's determination.).

Additionally, the record shows that Mr. Hughs primarily treated his pain with Ibuprofen, or Naproxen.  *See e.g.,* Tr. 315, 360.  Because an ALJ may rely upon conservative treatment to discount a claimant's testimony, it was reasonable for the ALJ to conclude that Mr. Hugh's use of over-the-counter pain medications was inconsistent with his testimony about his pain.  *See*

REPORT AND RECOMMENDATION - 9

*Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1162 (9th Cir. 2008) (ALJ found claimant's treatment to be conservative where claimant took only Ibuprofen to treat his pain). Accordingly, the Court affirms the ALJ's reliance on "conservative treatment" to discount Mr. Hugh's testimony.

### b.   ALJ's observations of Mr. Hughs

The ALJ also found Mr. Hughs' ability to sit comfortably throughout the hearing was inconsistent with his testimony that he could sit for only fifteen to twenty minutes before becoming uncomfortable.[7] Tr. 54. There is no evidence that the ALJ's observations are inaccurate. However, in his reply brief, Mr. Hughs contends the ALJ's personal observations constitute improper "sit and squirm" jurisprudence. Dkt. 16 at 4. The contention is misplaced. While an ALJ may not solely rely on his or her observations of a claimant's functioning to discount the claimant's testimony, an ALJ may use his or her personal observations as part of an overall evaluation of the credibility of the individual's statements. *See Orn v. Astrue,* 495 F.3d 625, 639–40 (9th Cir. 2007). An ALJ's reliance on personal observations is improper only where the ALJ gave no other valid reason to reject the claimant's testimony. *See Orn*, 495 F.3d at 609. Here, however, the ALJ gave at least one other valid reason to discount Mr. Hughs' testimony—conservative treatment. The ALJ accordingly did not err in considering his personal observations, and finding that Mr. Hugh's ability to sit comfortably at the hearing was inconsistent with his testimony about his sitting limitations.

As noted above, the ALJ gave other reasons to discount Mr. Hughs' testimony. Even if the court assumed the other reasons are invalid, the court must affirm the ALJ's credibility determination. This is because where an ALJ gives at least one valid reason to discount a

---

[7] The transcript shows that the ALJ hearing lasted approximately one hour and forty-five minutes, beginning at 1:14pm and concluding at 2:56pm. Tr. 3, 86.

REPORT AND RECOMMENDATION - 10

claimant's testimony, the ALJ's inclusion of invalid reasons is harmless. *See Carmickle*, 533 F.3d at 1162 (including an erroneous reason among other reasons to discount a claimant's credibility does not negate the validity of the overall credibility determination and is at most harmless error where an ALJ provides other reasons that are supported by substantial evidence). Accordingly, the Court affirms the ALJ's credibility determination.

C.      **RFC determination and step four and five findings**

Mr. Hughs contends that by misevaluating his RFC, the ALJ erred in finding he could perform his past work at step four, and other jobs at step five. Dkt. 12 at 13. The Court agrees. A claimant's RFC "is the individual's maximum remaining ability to do sustained work activities in an ordinary work setting on a regular and continuing basis." SSR 96-8p (emphasis omitted); *see also* 20 C.F.R. § 404.1545. In determining a claimant's RFC, an ALJ must assess all the relevant evidence, including medical reports and witnesses' descriptions of limitations, to determine the claimant's capacity for work. *See* 20 C.F.R. § 416.945(a). "[A]n RFC that fails to take into account a claimant's limitations is defective." *Valentine v. Comm'r of Soc. Sec.*, 574 F.3d 685, 690 (9th Cir. 2009).

Similarly, hypothetical questions that an ALJ poses to a VE to determine what work a claimant can perform "must include 'all of the claimant's functional limitations, both physical and mental' supported by the record." *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) (quoting *Flores v. Shalala*, 49 F.3d 562, 570–71 (9th Cir. 1995)). When the hypothetical is not supported by the record and does not include all the limitations, the VE's testimony has no evidentiary value and cannot support the ALJ's decision. *Embrey v. Bowen*, 849 F.3d 418, 422-23 (9th Cir. 1988).

/

REPORT AND RECOMMENDATION - 11

### 1.   ALJ's step four determination

At step four, the ALJ found Mr. Hughs not disabled because he could perform his past work as a delivery driver which was classified as a light job. Tr. 29. As an initial matter, the record does not support this finding. The ALJ found Mr. Hughs could only stand and walk for four hours in an eight hour work day. Tr. 22. With this limitation, the VE testified Mr. Hughs could not perform his past work as a delivery driver which is classified as "light work." Tr. 83. The VE testified the limitation would reduce the delivery driving job from the light work level to the "sedentary" work level, and might even eliminate or erode the availability of any delivery driving jobs. *Id.* Based on the VE's testimony, the ALJ's determination that Mr. Hughs could perform his past work as a delivery driver, which is light work, is not supported by substantial evidence.

Additionally, the ALJ harmfully erred at step four because he did not account for Dr. West's opinion that Mr. Hughs had pushing/pulling and visual limitations, and because he failed to include the limitations in the questions posed to the VE. Because an RFC that does not account for all limitations is defective, the ALJ committed reversible error.

### 2.   ALJ's step five determination

The ALJ also made an "alternative" finding at step five that there were other jobs that Mr. Hughs could perform. Tr. 29. At step five the Commissioner had the burden to show that Mr. Hughs could perform other gainful work. *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir. 1999). To meet this burden, the ALJ solicited testimony from a VE through hypothetical questions. *Id*. at 1100-1101. As noted above, hypothetical questions posed to the vocational expert must set out *all* the limitations and restrictions of the particular claimant. As this did not occur, the VE's testimony has no evidentiary value and cannot support the ALJ's step five

determination that Mr. Hughs can perform "other" jobs in the national economy.

The Court notes Mr. Hughs also argues the ALJ erred at step four and five by finding that he would be off task for five to five and one half percent per day. He contends the evidence shows he cannot work. Dkt. 23 at 13-14. This argument is based on Mr. Hugh's interpretation of the medical evidence. However, as discussed above, the ALJ properly discounted Dr. Kim's opinions, and Dr. West did not opine Mr. Hughs was unable to work. As to the other medical opinions of record, Mr. Hughs did not challenge them. Thus, the Court declines to disturb the ALJ's interpretation of the evidence[8] and the conclusion that Mr. Hughs' impairments would cause him to be off task for five and one half percent of a work day.

**D.    Scope of Remand**

Mr. Hughes contends his case should be remanded for an award of benefits, or alternatively, for additional administrative proceedings. Dkt. 12 at 16. Generally, the Court will remand for an award of benefits only in the rare case. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). The Court may remand for an award of benefits where:

> the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

---

[8] The ALJ gave significant weigh to the opinion of Dr. Christmas Covell, Ph.D. who opined Mr. Hughs could understand, recall, and carry out simple tasks and instructions, with possible difficulties in attendance, pace and persistence in completing a typical work day/week. Tr. 27 Tr. 368. The ALJ also gave weight to the opinions of state agency consultants Jerry Gardner, Ph.D. and John Robinson, Ph.D. that Mr. Hughs could understand and remember short one to three step instructions, but his pace may slow with more complex tasks. Tr. 27, 99-100, 116. The ALJ's RFC determination that Mr. Hughs would be five and a half percent off task during the work day is a rational interpretation of these findings.

REPORT AND RECOMMENDATION - 13

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). However, the Court should remand for further proceedings where "critical factual issues remain unresolved," *Brown-Hunter,* 2015 WL 4620123, at *1, or where additional proceedings can remedy defects in the original administrative proceedings. *McCartey v. Massanari,* 298 F.3d 1072, 1076 (9th Cir. 2002).

Under these standards, the court concludes that remanding the case for further proceedings would be appropriate. The visual acuity and push/pull limitations that Dr. West found were neither assessed by the ALJ nor considered by a VE. It would be inappropriate for the Court to make factual determinations as to the extent of these limitations, and legal determinations as to Mr. Hugh's RFC and ability to perform work at steps four and five. These are matters reserved to the Commissioner and should not be decided, in the first instance, by this Court on review. Further proceedings are thus not only appropriate but necessary to determine the impact of these limitations on Mr. Hughs' RFC and his capacity to perform work at steps four and five.

## CONCLUSION

For the foregoing reasons, the Court recommends that the Commissioner's final decision be **REVERSED** and the case be **REMANDED** for further administrative proceedings under sentence four of 42 U.S.C. § 405(g). On remand, the ALJ shall address all of the limitations assessed by Dr. West including the visual and push/pull limitations, develop the record as appropriate, reassess Mr. Hughs' RFC, proceed to steps four and five, and call a VE as needed.

A proposed order accompanies this Report and Recommendation. Any objection to this Report and Recommendation must be filed and served no later than **September 8, 2015.** If no objections are filed, the Clerk shall note the matter for **September 11, 2015,** as ready for the

1  Court's consideration.  If objections are filed, any response is due within 14 days after being

2  served with the objections.  A party filing an objection must note the matter for the Court's

3  consideration 14 days from the date the objection is filed and served.  Objections and responses

4  shall not exceed ten pages.  The failure to timely object may affect the right to appeal.

5        DATED this 25th day of August, 2015.

_____
BRIAN A. TSUCHIDA
United States Magistrate Judge

REPORT AND RECOMMENDATION - 15